IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER SUNKIN, | ) | CASE NO. 5:15CV892 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| HUNTER ENGINEERING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |

Before the Court for decision is Plaintiff Christopher Sunkin's Motion to Remand this case to state court. Doc. 14. Pro se Plaintiff Sunkin ("Sunkin") originally filed his complaint in this case in the Summit County, Ohio, Court of Common Pleas, claiming misappropriation of trade secrets under Ohio's Uniform Trade Secret Act ("OUTSA") and tortious interference with business relationships. Doc. 1-1. Sunkin's prayer for relief seeks "compensatory damages in excess of Twenty-Five Thousand Dollars ($25,000), punitive damages in excess of Twenty-Five Thousand Dollars ($25,000), as well as fees, costs and any other compensation this court deems fit." Doc. 1-1, p. 6.[1]

Defendant Hunter Engineering Company ("Hunter") removed this case to federal court pursuant to 28 U.S.C. § 1441 based on the Court's diversity jurisdiction as set forth in 28 U.S.C. § 1332. Hunter asserts that it and Sunkin are citizens of different states and that the amount in controversy exceeds $75,000. Doc. 1.

---

[1] Sunkin's prayer for relief is in accordance with Ohio R. Civ. P. 8(A), which provides in part:

> If the party seeks more than twenty-five thousand dollars, the party shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought . . . .

Sunkin's Motion to Remand argues that Hunter has not proven by a preponderance of the evidence that the amount in controversy exceeds $75,000. Doc. 14, p. 1. Sunkin argues that his complaint demands an indeterminate amount of damages greater than $25,000 in compliance with Ohio Civil Rule 8(A). Doc. 14, p. 1. Hunter opposes the motion to remand and argues that it has met its burden with respect to the amount in controversy. Doc. 15, p. 1. Sunkin filed a response to Hunter's opposition that reiterates the burden on the removing party and alleges that Hunter has not met that burden. Doc. 17, pp. 1-3.

## I. Background

### A. Misappropriation of Trade Secrets

Sunkin alleges in his Verified Complaint that he ordered equipment and services from Hunter on April 20, 2011. Doc. 1-1, p. 2, ¶ 3. Without Sunkin's approval or knowledge, Hunter assigned the order to Ott, a local contract agent of Hunter and a direct competitor of Sunkin. Doc. 1-1, p. 3, ¶ 5. Hunter delivered the equipment and installed it in a facility owned by Sunkin's customer, AT&T Corporation.[2] Doc. 1-1, p. 2, ¶ 4. Sunkin did not know that Hunter assigned the order to Ott until Ott sought payment for its services. Doc. 1-1, p. 3, ¶ 6. Sunkin maintains that Hunter was aware that Sunkin intended to resell the equipment to a third party and "impressed upon [Hunter] in great detail the importance of the business relationship with AT&T to [Sunkin's] business and the absolute need for discretion and confidentiality." Doc. 1-1, p. 3, ¶ 7. The Complaint alleges that, in a meeting in Indianapolis, Sunkin and Hunter's employee Richard Hudon agreed:

> **a)**, that the relationship, business arrangement and all information and details regarding such between the Plaintiff and his customer, AT&T, would remain confidential between Sunkin and Hunter; **b)**, that any and all contact regarding this and any other transaction would be made exclusively and without exception by the Plaintiff; **c),** that information about this business relationship, information

[2] Hunter disputes that it installed the equipment. Doc. 4, pp. 1-2, ¶ 4.

> regarding the identities of the key individuals at AT&T and Kelly Amerit and all other information being shared for the purposes of this singular Transaction, constituted confidential information that was the sole property of the Plaintiff and **d)**, that none of this information would be shared with any other individual or entity, nor would there be any attempt on Hunter's behalf to solicit business using this information.

Doc. 1-1, pp. 3-4, ¶¶3, 9.

Sunkin alleges that, when Hunter conveyed the "confidential business information" regarding the equipment purchase to Ott, Sunkin's competitor, it violated the terms of the business relationship between Sunkin and Hunter. Doc. 1-1, p. 4, ¶ 12. Sunkin claims Hunter's actions resulted in a "loss of profits, goodwill and competitive advantage as well as other incidental and consequential damages as a direct and proximate result of Hunter's willful misappropriation in violation of the Ohio Uniform Trade Secrets Act, ORC 133.61 *et seq*." Doc. 1-1, p. 4, ¶ 12. Sunkin seeks compensatory damages, punitive damages, and fees and costs in accordance with the applicable statutes: R.C. 1333.63 and R.C. 1333.64. Doc. 1-1, p. 4, ¶ 12.

**B. Tortious Interference with Business Relationships**

Sunkin also alleges that Ott used the information it received from Hunter to contact a management representative from Sunkin's customer, AT&T. Doc. 1-1, p. 4, ¶ 15. Sunkin alleges that Ott reported to an AT&T manager that "Ott was the actual entity that provided the equipment to AT&T and that [Sunkin] had refused payment to Ott for said equipment." Doc. 1-1, p. 4-5, ¶ 16. Sunkin alleges that Ott also provided the AT&T representative with the confidential wholesale prices of the equipment and Sunkin's profit margin. Doc. 1-1, p. 5, ¶ 17. Additionally, Sunkin alleges that Ott wrongfully solicited business from an AT&T senior manager via e-mail. Doc. 1-1, p. 5, ¶ 18.

Sunkin claims that he "has suffered a loss of profits, goodwill, and competitive advantage as well as other incidental and consequential damages as a direct and proximate result of the

Defendant's willful and malicious actions of Tortious Interference with Business Relationships." Doc. 1-1, p. 5, ¶ 19. He seeks compensatory damages, punitive damages, and fees and costs as statutorily allowed. Doc. 1-1, p. 5, ¶ 20.

## II. Law

### A. Removal to Federal Court

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The federal district court has original jurisdiction over a cause of action pursuant to 28 U.S.C. § 1332 when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States."

Diversity of citizenship is not at issue in this case. *See* Doc. 15, p. 2. Sunkin is a citizen of Ohio and Hunter is incorporated in Missouri and has its principal place of business in Missouri. Doc. 1, p. 2; Doc. 1-1, p. 2. An issue does exist regarding whether the complaint states a claim upon as to which the amount in controversy exceeds $75,000.

### B. Determining the Amount in Controversy

In determining whether there is diversity jurisdiction, "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." *Shupe v. Asplundh Tree Expert Co.*, 566 Fed. Appx. 476, 478 (6th Cir. 2014)(quoting 28 U.S.C. § 1446(c)(2)). When a party removes a case to federal court, the removing party is responsible for identifying specific facts that support diversity jurisdiction, including evidence that the statutorily required amount in controversy has been met. *Gafford v Gen. Elec. Co*, 997 F.2d 150, 155 (6th Cir. 1993), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S.Ct. 1181 (2010). In order to do so,

the removing party must assert that the amount in controversy exceeds $75,000 at the time of removal. *See Rogers v. Walmart Stores, Inc.*, 230 F.3d 868, 871(6th Cir. 2000)(citing *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996))(holding that federal diversity jurisdiction is determined when the case is removed). If the plaintiff's complaint alleges a prayer for relief that "is not self-evidently greater or less than" the statutory amount required for removal, the defendant is responsible for establishing by a preponderance of the evidence (that it is more likely that not) that the amount-in-controversy requirement has been met based on a fair reading of the pleadings. *Gafford*, 997 F.2d at 158; *see also Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 573 (6th Cir. 2001)(agreeing with the defendant that "a fair reading of the unspecified and unliquidated damages sought by the plaintiffs established that more than $75,000 was in controversy").

To establish the amount in controversy, the moving party may present evidence related to the compensatory damages as well as projected punitive damages and attorneys' fees demanded in the initial pleadings. *Brown v. Jackson Hewitt, Inc*., 2007 WL 642011, *3 (N.D. Ohio Feb. 27, 2007)(citing *Hayes*, 266 F.3d 560, 572 (6th Cir. 2001)(punitive damages); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.3d 1167, 1168)(attorneys' fees)). However, punitive damages should not be included in the amount-in-controversy calculation if "it is apparent to a legal certainty that such cannot be recovered." *Hayes*, 266 F.3d at 573.

**III. Discussion**

In this case, Hunter has met its burden of proving by a preponderance of the evidence that the amount in controversy exceeds $75,000. Hunter explains that, under Ohio Civ. R. 8(A), a party's complaint is required to state that the party seeks more than $25,000 but "shall not specify in the demand for judgment the amount of recovery sought." Doc. 15, p. 3; *see* Ohio

Civ. R. 8(A). Such a generic pleading is not dispositive in determining the amount in controversy. *Karl v. Bizar*, 2009 WL 2175981, at * 3 (S.D.Ohio July 21, 2009) ("in excess of $25,000" is a "boilerplate demand that is commonly made in Ohio state courts."). Accordingly, the Court looks beyond the monetary request in Sunkin's Complaint to determine whether the amount in controversy is met. *See id.*

Hunter's Notice of Removal states that, even though the Complaint does not explicitly claim an amount greater than $75,000, it is more likely than not that the amount in controversy exceeds $75,000. Doc. 1, p. 3. In support, Hunter points out that Sunkin seeks compensatory damages greater than $25,000 and punitive damages, for each claim, greater than $25,000. Doc. 15, p. 4. The Court may consider the amount of punitive damages sought in determining the amount in controversy because Sunkin may recover punitive damages under both his misappropriation of trade secrets claim and his tortious interference with business relationships claim. *See* R.C. § 1333.63(B) (punitive damages for willful and malicious misappropriation are available for up to three times compensatory damages); R.C. § 2315.21(D)(2)(a) (punitive damages up to two times compensatory damages available if defendant acted with malice); *see also Hayes*, 266 F.3d at 572 ("When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered."); *Kovacs v. Chesley*, 406 F.3d 393, 397 (6th Cir. 2005) ("where [ ] state law at least arguably permits the type of damages claimed, the amount in controversy requirement will be satisfied even if it is unlikely that the plaintiff can recover an amount exceeding the jurisdictional requirement.").

Sunkin's Verified Complaint alleges that Hunter willfully misappropriated his trade secrets and willfully and maliciously tortiously interfered with his business relationship. Doc. 1-

1, p. 4, ¶12; p. 5, ¶19. Thus, punitive damages are recoverable for each claim and are taken into account when considering the jurisdictional amount. *Hayes*, 266 F.3d at 572. Under Ohio law, punitive damages are recoverable for two or three times the amount of compensatory damages. R.C. § 1333.63(B); R.C. § 2315.21(D)(2)(a). Because Sunkin alleges compensatory damages in excess of $25,000, he may potentially recover at least twice that amount, $50,000, in punitive damages for a total recovery of more than $75,000. Therefore, a fair reading of the unspecified damages sought by Sunkin establishes that more than $75,000 is in controversy in this case. *See Hayes*, 266 F.3d at 573; *Karl v. Bizar*, 2009 WL 2175981, at *4 ("Combining the possible value of compensatory and punitive damages, the total possible damages recoverable in this case could amount to just over [] $75,000.").

## IV. Conclusion

For the foregoing reasons the Court **DENIES** Plaintiff's Motion to Remand (Doc. 14).

IT IS SO ORDERED.

Dated: July 20, 2015

Kathleen B. Burke
United States Magistrate Judge